# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DWAIN WILLIAMS (#334082)**

**VERSUS**

**DARREL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 18-499-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 18, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DWAIN WILLIAMS (#334082)**

**VERSUS**

**DARREL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 18-499-JWD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Dwain Williams, challenges his conviction of manslaughter, entered in 2011 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. On April 24, 2018, the petitioner filed a petition for a writ of habeas corpus contending: (1) he was denied the right to testify, (2) his due process rights were violated when he was adjudicated a multiple felony offender, (3) DNA testing should be conducted, (4) he was denied a fair trial because crucial evidence was not preserved, (5) prosecutorial misconduct, (6) he was denied the right to confront a witness against him, and (7) his conviction was based on insufficient evidence.

### Procedural History

After a trial by jury conducted in May of 2011, the petitioner was found guilty of manslaughter, and on September 1, 2011 the petitioner was sentenced to 65 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The petitioner thereafter appealed his conviction to the Louisiana First Circuit Court of Appeal ("First Circuit"),

asserting both counseled and *pro se* errors. Counseled errors included: the trial court erred in adjudicating the petitioner a third-felony habitual offender, the trial court erred in denying the petitioner's motion to reconsider sentence, and the trial court imposed an unconstitutionally excessive sentence. As *pro se* errors, the petitioner asserted that his Sixth Amendment right to confrontation was violated and the evidence was insufficient to support his conviction. On September 21, 2012, the First Circuit affirmed petitioner's conviction, but remanded to the Nineteenth Judicial District Court for resentencing, as the trial court erroneously imposed a sentence without the benefit of parole. *State v. Williams*, 2012-0147 (La. App. 1 Cir. 9/21/12), 2012 WL 4335435. The petitioner appealed the First Circuit's ruling affirming his conviction to the Louisiana Supreme Court, which denied review on April 19, 2013. *State v. Williams*, 2012-2310 (La. 4/19/13), 111 So.3d 1028.

Pursuant to the remand Order from the First Circuit, the Nineteenth Judicial District Court resentenced the petitioner on February 13, 2013 to 65 years imprisonment with the benefit of parole. The petitioner appealed his sentence to the First Circuit, arguing that the sentence was excessive, and the trial court erred in denying his motion to reconsider the sentence. On February 28, 2014, the First Circuit affirmed the sentence. *State v. Williams*, 2013-1111 (La. App. 1 Cir. 2/28/14), 2014 WL 823399. The Louisiana Supreme Court denied the petitioner's writ application on November 7, 2014. *State v. Williams*, 2014-0688 (La. 11/7/14), 152 So.3d 173.

On or about January 13, 2016, the petitioner filed an application for post-conviction relief in the Nineteenth Judicial District Court asserting: he was denied the right to testify, additional DNA testing should be conducted, he was denied a fair trial because crucial evidence was not

preserved, and prosecutorial misconduct.  Pursuant to an Order dated August 1, 2016, the

petitioner's application was denied in the trial court.[1]  The First Circuit denied further review on

October 31, 2016.[2]  The Louisiana Supreme Court subsequently denied review on April 2, 2018.[3]

On or about April 24, 2018, the petitioner filed the instant application for habeas corpus

relief in this Court.

### Timeliness

The Court concludes that the petitioner's application for habeas corpus relief is timely.

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal

habeas corpus claims brought by prisoners in state custody.  This limitations period begins to run

on the date that the judgment becomes final through the conclusion of direct review or through

the expiration of time for seeking such review.  As a result, after a ruling by the state's highest

court on direct appeal, a petitioner's judgment becomes final when the United States Supreme

Court issues a decision denying discretionary review or, if no application for review is made,

upon the conclusion of the 90-day time period for seeking such review. *Roberts v. Cockrell*, 319

F.3d 690, 694 (5th. Cir. 2003).

The state argues that part of the petitioner's application is untimely because the judgment

of conviction became "final" ninety days after the Louisiana Supreme Court denied review of the

First Circuit's opinion affirming the petitioner's conviction, even though the First Circuit

remanded to the trial court for resentencing.  The Fifth Circuit addressed this issue in *Scott v.*

*Hubert*:

---

[1] R. Doc. 7-1, p. 149
[2] R. Doc. 7-1, p. 39.
[3] R. Doc. 7-1, pp. 35-36.

> [W]e hold that when a state prisoner's conviction is affirmed on direct appeal but the sentence is vacated and the case is remanded for resentencing, the judgment of conviction does not become final within the meaning of 28 U.S.C. § 2244 (d)(1)(A) until both the conviction and the sentence have become final by the conclusion of direct review or the expiration of time for seeking such review.

635 F.3d 659 (5th. Cir. 2011).[4]

In the instant case, the judgment did not become final until February 5, 2015, ninety days after the Louisiana Supreme Court denied review on the appeal of his sentence. Thereafter, approximately 342 days elapsed before the petitioner filed his PCR application on January 13, 2016. The Louisiana First Circuit Court of Appeal denied his writ application on October 31, 2016 and the Louisiana Supreme Court denied his application for supervisory writs on April 2, 2018.

Approximately 22 days passed between the denial of the petitioner's writ application by the Louisiana Supreme Court and the filing of the instant petition on April 24, 2018. This results in a total of 364 days of untolled time during which the petitioner did not have any properly filed application for post-conviction or other collateral relief pending before the state courts. Accordingly, less than a year elapsed during which the petitioner did not have any properly filed applications for post-conviction or other collateral review pending before the state courts, and the petitioner's application is timely.

## Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal[5] are as follows: In the very early morning hours of April 29, 2009, the petitioner was

---

[4] The Court also rejected the State's suggestion, as in the instant matter, that two separate judgements were created for habeas purposes, a "conviction judgment" and a "sentencing judgment." *Id.* at 665.

[5] *State v. Williams*, 2012-0147 (La. App. 1 Cir. 9/21/12), 2012 WL 4335435.

driving around Baton Rouge in his mother's car with his friends, Larry Ledoux and Jonathan

Milliken. They stopped and bought a rock of crack cocaine. According to Ledoux, who testified

at trial, the petitioner drove to Tanner Street and parked so they could divide up the cocaine rock

and smoke it. The petitioner broke off a piece of the rock for Milliken and placed it on the seat.

Angered at how small the piece was, Milliken said he did not want it and knocked it off the seat.

The petitioner and Milliken exchanged words then jumped out of the car. Ledoux stayed in the

car and watched the petitioner and Milliken approach each other at the front of the car. Milliken

punched the petitioner in the face, knocking him to the ground. Ledoux got out of the car and

told them to "chill out." The petitioner jumped back up with a pocket knife and unfolded the

blade. The petitioner moved toward Milliken with the knife. Milliken took off running, and the

petitioner chased after him. Ledoux got back in the car and searched for the discarded piece of

rock cocaine. About five minutes later, the petitioner returned to the car without Milliken.

When Ledoux asked where Milliken was, the petitioner replied, "J's straight." The petitioner

then dropped off Ledoux at his mother's house. Shortly thereafter, Ledoux gave a taped

statement to the police.

Between 2:00 a.m. and 3:00 a.m., Anthony Kirk, who was homeless, was sitting in his

truck in the driveway of his ex-wife's house on Tanner Street. Kirk testified at trial that he saw a

man chasing another man. They ran out of sight then about two minutes later, Kirk saw only one

man walking. It was dark and Kirk could not identify the man. Kirk watched the man walk to

the dead-end of Tanner Street. Kirk saw headlights in that area come on, then saw a car leave.

Kirk heard moaning and someone asking for help. Kirk walked over to a vacant lot and found

Milliken on the ground, bleeding. Kirk called 911. While Kirk was on the phone with the 911

operator, Milliken identified the petitioner as the person who stabbed him.  Milliken suffered

stab wounds to his chest, back, shoulder, and thigh.  He was brought to the hospital and received

ten units of blood. Ultimately, his injuries proved fatal.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to

that statute, an application for a writ of habeas corpus shall not be granted with respect to any

claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  Relief is authorized if a state court has arrived at a

conclusion contrary to that reached by the Supreme Court on a question of law or if the state

court has decided a case differently than the Supreme Court on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has

unreasonably applied that principle to the facts of the petitioner's case or has reached a decision

based on an unreasonable factual determination.  *See Montoya v. Johnson*, 226 F.3d 399, 404

(5th Cir. 2000).  Mere error by the state court or mere disagreement on the part of this Court with

the state court determination is not enough; the standard is one of objective reasonableness.  *Id.*

*See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the

'unreasonable application' inquiry should ask whether the state court's application of clearly

established federal law was objectively unreasonable").  State court determinations of underlying

factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## Substantive Review

### *Claim (1): Denial of the Right to Testify*

In Claim 1, the petitioner contends that he was denied the right to testify.  The petitioner claims that he advised his trial counsel he wanted to testify, but trial counsel advised him not to testify, believing that he would be exculpated by DNA evidence.[6]  The petitioner asserts that had he testified at trial, he would have said that on the day of the victim's murder around 3:30 p.m. or 4:00 p.m., he witnessed the victim and three black males engage in a verbal altercation at the Chevron gas station on Scenic Highway.  The petitioner states that he would have also testified that he saw these same three men on Tanner Street shortly before the murder.[7]

The state argues that the petitioner is procedurally barred from asserting Claim 1. Specifically, the state argues that the petitioner never fairly presented a federal claim to the state court because the petitioner only cited Louisiana precedent on this issue, *State v. Hampton*, 818 So.2d 720 (La. 3/22/02), which is a different and less onerous standard than a federal claim under *Strickland v. Washington*, 466 U.S. 668 (1984).[8]  In *Johnson v. Cain*, 712 F.3d 227 (5th. Cir. 2013), the Fifth Circuit was presented with the question of whether a petitioner fairly presented a federal claim at the state court level for "denial of the right to testify" when his argument at the state court level focused on the Louisiana standard announced in *State v. Hampton*, 818 So.2d 720 (La. 3/22/02).  The Fifth Circuit declined to squarely address the issue,

---

[6] R. Doc. 1-1, p. 181
[7] R. Doc. 1-1, pp. 182-183.
[8] R. Doc. 5, p. 19-23.

finding that the petitioner disclaimed his federal argument at least twice at the state court level. *Id*. at 231-232.  However, the Fifth Circuit suggested that merely labeling the claim as federal was sufficient to fairly present the claim in his state habeas petition, citing *Baldwin v. Reese,* 541 U.S. 27, 32 (2004). *Id.* at 232 (noting that "precedent suggests that Johnson fairly presented his federal right-to-testify claim in his state habeas petition").

In his post-conviction application, the petitioner labeled Claim 1 as a federal claim, with the heading:

> PETITIONER WAS DENIED HIS RIGHT TO TESTIFY IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN TRIAL COUNSEL DEPRIVED PETITIONER OF MAKING THE ULTIMATE DECISION OF TESTIFYING.[9]

Accordingly, because this claim specifically asserted violations of the United States Constitution, the Court finds that this claim was fairly presented to the state court by the petitioner and is not procedurally barred.

A defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense.  *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987).  It is one of the rights that "are essential to due process of law in a fair adversary process."  *See Rock*, 483 U.S. at 51.  The right to testify in one's own defense is protected by the Fifth Amendment's privilege against self-incrimination, the Sixth Amendment's compulsory process clause, and the Fourteenth Amendment's due process clause.  *See Rock*, 483 U.S. at 51-53.  When a defendant contends that trial counsel interfered with his right to testify, "the appropriate vehicle for such claims is a claim

---

[9] R. Doc. 1-1, p. 89.

of ineffective assistance of counsel." *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002) (citing *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001)).

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that his counsel's performance was both deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense"). *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994) (citing *Strickland*, 466 U.S. at 686-89, 693). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *See Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 689). As to the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 693).

A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. See *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689). The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *See Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687). The decision whether to put a defendant on the stand is a

10

judgment call which should not easily be condemned with the benefit of hindsight. *See Mullins*,

315 F.3d at 453.

    At the close of the prosecution's case, the following exchange occurred between the

petitioner's counsel, the petitioner, and the court:

| | |
|---|---|
| Mr. Smith: | Your honor, we have discussed whether or not Mr. Williams will be testifying, and I will, for the record, state that myself and Ms. Anderson both advised him not to testify. I think he has made the decision not to testify, based on our advice, and I did inform him that it's his decision to make, but based on our advice, he has decided not to testify. |
| The Court: | All right. That's your decision? |
| The Defendant: | Yes, Sir.[10] |

    The petitioner's trial concluded without him offering any testimony. There was

no objection, statement, or argument by the petitioner concerning his desire to testify.

When the petitioner's attorney rested his case, the petitioner did nothing.[11]

    In deciding the petitioner's post-conviction application, the state court found that the

petitioner failed to attach an affidavit from his counsel, which was required under *State v.*

*Hampton* to rebut the presumption that the petitioner knowingly and voluntarily waived his right

to testify. The state court also found that the decision not to testify was a trial strategy to the

avoid the petitioner being questioned about his prior criminal record[12] and that the trial record

demonstrated that the petitioner voluntarily and knowingly declined to testify at trial.[13] The

petitioner's acquiescent conduct at trial supports the state court's finding that the petitioner

---

[10] R. Doc. 6-4, pp. 161-162.
[11] R. Doc. 6-4, p. 168.
[12] R. Doc. 7-1. p. 26-27.
[13] R. Doc. 7-1, p. 26-27.

agreed not to testify. The petitioner has not shown that his attorney did not provide reasonably effective assistance under prevailing professional norms when he advised him to waive his right to testify.

Because counsel's performance was not deficient, it is not necessary to consider whether the challenged decision undermines confidence in the outcome of the petitioner's trial. However, the Court observes that the petitioner's claim that his testimony would have resulted in an acquittal falls short of satisfying *Strickland's* prejudice element. Considering the overwhelming evidence of the petitioner's guilt, particularly the victim's identification of the petitioner as the person who stabbed him, there is no basis for concluding that the petitioner's self-serving testimony would have resulted in a different outcome. Claim 1 is without merit.

### Claim (2): Due Process Rights Violated when Adjudicated Multiple Felony Offender

After his conviction for manslaughter, the state filed a habitual offender bill of information. A hearing was held, and the trial court adjudicated the petitioner a third-felony offender, imposing an enhanced sentence. In Claim 2, the petitioner asserts that his due process rights were violated because he was adjudicated a multiple felony offender on insufficient evidence. Specifically, the petitioner alleges that the state failed to prove that he was the same person convicted of the predicate felonies used to enhance his sentence. The petitioner raised this claim on direct appeal. The First Circuit's opinion detailed the evidence presented at the habitual offender hearing and found this assignment of error to be without merit:

> At the habitual offender hearing, Brannan testified that he conducted the presentence investigation for the instant manslaughter conviction. As a parole officer, Brannan did not supervise the defendant. Brannan stated that the parole officers who supervised the defendant were no longer with his Baton Rouge District Office. Brannan brought to the hearing the case materials for the probation and parole supervision pertaining to the defendant's two prior convictions. A

12

photograph of the defendant was contained in the probation file for docket number 3–93–1369.  Brannan testified that all of the information in these two files, *i.e.,* date of birth, state identification number, docket number, "everything," matched the information contained in the presentence investigation. Brannan further testified that in his interview of the defendant, the defendant acknowledged that those convictions in Brannan's probation and parole case materials were his convictions.

At the habitual offender hearing, the State introduced into evidence State's Exhibits 1 and 2 *in globo.*  State's Exhibit 1 consisted of certified copies of the bill of information for docket number 3–93–1369, minutes of the guilty plea, and the *Boykin* transcript of the guilty plea hearing on December 7, 1993, where the defendant had counsel and was properly *Boykinized,* State's Exhibit 2 consisted of certified copies of the bill of information for docket number 8–93–1318, minutes of the guilty plea, and the *Boykin* transcript of the guilty plea hearing on September 19, 1994, where the defendant had counsel and was properly *Boykinized.*

All three bills of information—the instant indictment charging second degree murder (docket number 5–09–0400); the bill charging forgery wherein the defendant pled guilty to felony theft between $100 and $500 (docket number 3–93–1369); and the bill charging distribution of cocaine wherein the defendant pled guilty to possession with intent to distribute cocaine (docket number 8–93–1318)—contain identical biographical information of the defendant. Each lists the defendant's name, his race as black, his sex as male, his date of birth as September 22, 1970, and his address as 2604 73rd Ave., Baton Rouge, LA.  At the December 7, 1993 *Boykin* examination (felony theft), the defendant states his address as 2604 73rd Avenue, Baton Rouge, Louisiana, 70807, and his date of birth as "9/22/70."

While the defendant's first name is spelled differently on the documentation establishing his felony theft conviction, we find such a discrepancy to be minor and suggestive of nothing more than a clerical error, given that "Dwayne" is a very common spelling of that name.  The State introduced evidence of the defendant's prior convictions that contained identical personal information about the defendant (the first name discrepancy notwithstanding) as the personal information found in the minutes and indictment of the defendant's instant conviction.  Furthermore, parole officer Patrick Brannan's testimony corroborated the State's exhibits in establishing the defendant's identity on the predicates.

The evidence introduced by the State at the habitual offender hearing was sufficient to establish that the defendant was the same person convicted of two prior felonies.  Accordingly, this counseled assignment of error is without merit.[14]

The well-established federal standard set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979), requires the Court to determine whether, after identifying the elements of the charge as defined by the State and viewing the evidence in the light most favorable to the prosecution, a

---

[14] *State v. Williams*, 2012-0147 (La. App. 1 Cir. 9/21/12), 2012 WL 4335435.

rational trier of fact could have found the essential elements of the charge to have been proven beyond a reasonable doubt. *Jackson,* 443 U.S. at 319; *Donahue v. Cain,* 231 F.3d 1000, 1004 (5th Cir. 2000); *Gilley v. Collins,* 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing,* 934 F.2d 80, 82 (5th Cir. 1991). To establish that a defendant is a habitual felony offender in Louisiana, the state is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. *State v. Shelton,* 621 So.2d 769 (La. 1993). Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction. *State v. Staggers,* 03-655 (La. App. 5 Cir. 10/28/03), 2003 WL 22438958. However, independent proof, such as matching fingerprints and other vital information, is required to show that the defendant is the same person identified in those records. *State v. Walker,* 01-348 (La. App. 5 Cir. 8/28/01), 795 So.2d 459, 463.

As outlined above, the Louisiana First Circuit determined that the evidence presented by the state identified the petitioner as the same person who was convicted in 1993 of forgery and convicted in 1994 of possession with the intent to distribute cocaine. The petitioner has pointed to nothing in the record to refute these findings of fact that has not already been addressed and resolved by the state courts in reaching their conclusions. Instead, these findings are supported by the record and transcripts, including the documents referenced therein and are entitled to deference.

The evidence, considered in the light most favorable to the prosecution, was sufficient for the state courts to find that the prior felony convictions were appropriate as a basis to enhance his sentence under the Louisiana habitual offender laws. The state courts' denial of relief on this

claim was not contrary to, or an unreasonable application, of Supreme Court precedent. The

petitioner is not entitled to federal habeas corpus relief on this claim.

### Claim (3): DNA Testing Should be Conducted

In Claim 3 the petitioner, "requests Short Tandem Repeat ("STR") DNA testing on

evidence collected in relation with this case."[15]  Specifically, he requests that items collected

from the crime scene be tested for DNA, contending that DNA evidence will establish he is

innocent of the crime.[16]  This claim was raised in the petitioner's application for post-conviction

relief.  The state court analyzed the claim under Louisiana Code of Criminal Procedure Article

926.1 and dismissed it as without merit, finding:

> The DNA statute, art. 926.1 is directed at freeing the innocent and not reweighing
> the evidence used to convict.  Although Petitioner claims otherwise, testing these
> items of clothing cannot establish Petitioner's innocence.  The standard for DNA
> testing is whether the test result will establish innocence of a defendant by clear
> and convincing evidence.  Not whether testing might "augment his claim of
> innocence."  This Commissioner fails to see how the test results on these omitted
> items could exonerate or completely vindicate Petitioner of the murder so that he
> could possibly obtain a new trial or for that matter, undermine the prosecution's
> case.  Moreover, nor has Petitioner proven that he was prejudiced by the State's
> failure to test the few items that were not sent for testing.  In this case the jury heard
> that the victim's clothing lacked the Petitioner's DNA but convicted anyway based
> on other evidence.

Insofar as Petitioner challenges the correctness of the state court's application of the state

rules governing DNA testing before this court, it has been uniformly held that "it is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions." *Estelle v. McGuire*, 502 U.S. 62 (1991).  A federal court conducting habeas review

is limited to determining whether a petitioner's custody is in violation of the Constitution, laws,

---

[15] R. Doc. 1-1, p. 185.
[16] R. Doc. 1-1, p. 185.

15

or treaties of the United States.  See 28 U.S.C. § 2254(a); *Estelle*, 502 U. S. at 68; *Engle v. Isaac*, 456 U.S. 107 (1982); *see also, Hansbro v. Cain*, 2006 WL 3488729, (W.D. La. 10/20/06) ("This court is not concerned with whether the state courts properly applied Article 926.1 because federal habeas relief does not lie for errors of state law.")  Accordingly, this court cannot review the correctness of the state court's determination regarding the application of La. C. Cr. P. art. 926.1 to petitioner's request for DNA testing.  *See also*, *Robinson v. Warden, Louisiana State Penitentiary,* 2016 WL 3200194 (5th. Cir. 2016).

Also, to the extent the petitioner argues that the Constitution demands that he be granted additional post-conviction DNA testing, such a claim has been foreclosed by the U.S. Supreme Court's decision in *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009) (rejecting substantive due process right of "access to state evidence so that [petitioner] can apply new DNA-testing technology that might prove him innocent").  In that case, the Supreme Court held that there was no free-standing federal constitutional right to obtain post-conviction access to the state's evidence for DNA testing. *Id*.  Therefore, the Court finds that Petitioner is not entitled to relief on Claim 3.

### Claim (4): Denial of Fair Trial Due to Failure to Preserve Crucial Evidence

In Claim 4, the petitioner asserts that his Fourteenth Amendment right to due process was denied because Detective Scott Blake failed to preserve crucial evidence.  Namely, the petitioner contends that Detective Blake failed to send the victim's red pants and shoes to the crime lab for testing.  The petitioner raised this claim in his application for post-conviction relief.  The state trial court denied the claim on procedural grounds under Louisiana Code of Criminal Procedure Article 930.4 (B) & (C), ruling that the petitioner inexcusably failed to raise the claim in the trial court or

16

on appeal.[17]  The Louisiana Supreme Court affirmed the procedural bar in its *per curiam* opinion

denying review, specifically citing Louisiana Code of Criminal Procedure Article 930.4.[18]

When a state court decision to deny post-conviction relief rests on a state law ground that

is independent of the federal questions raised by the petitioner and is adequate to support the

judgment, the federal courts lack jurisdiction to review the merits of the petitioner's federal

claims.  *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Moore v. Roberts,* 83 F.3d 699, (5th

Cir.1996).  The independent and adequate state ground doctrine "applies to bar federal habeas

when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s]

failed to meet a state procedural requirement."  *Coleman,* at 729–730.  In the absence of the

independent and adequate state ground doctrine in federal habeas, habeas petitioners would be

able to avoid the exhaustion requirement by defaulting their federal claims in state court. The

independent and adequate state ground doctrine ensures that the States' interest in correcting

their own mistakes is respected in all federal habeas cases.  *Id.,* at 731–32 (quoting *Rose v.

Lundy,* 455 U.S. 509 (1982)); *Moore, supra,* at 703.

For the independent and adequate state ground doctrine to apply, the state courts

adjudicating a habeas petitioner's claim must explicitly rely on a state procedural rule to dismiss

the petitioner's claims.  *Moore, supra,* at 702; *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995).

The procedural default doctrine presumes that the "state court's [express] reliance on a

procedural bar functions as an independent and adequate ground in support of the judgment."  *Id.*

Petitioner can rebut this presumption by establishing that the procedural rule is not "strictly or

regularly followed." *Id.*  Even if the state procedural rule is strictly and regularly followed, the

---

[17] R. Doc. 7-1, p. 31.
[18] R. Doc. 7-1, p. 35-36.

petitioner can still prevail by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, *Moore, supra,* at 702.

Petitioner did not even attempt to establish that the procedural rule of Article 930.4 has not been "strictly or regularly followed," *Sones,* at 416, by the Louisiana state courts. A search of reported decisions referencing La.C.Cr.P. art. 930.4(C) showed that the procedural bar is strictly and regularly followed. *Roy v. Cain,* 792 So.2d 3 (La. 2001); *State ex rel. Brister v. State,* 775 So.2d 1079 (La. 2000); *State ex rel. Baylis v. Maggio,* 464 So.2d 1370 (La. 1985); *State v. Gaines,* 701 So.2d 688 (La. App. 4th Cir. 1997); *State v. Ballom,* 520 So.2d 476 (La. App. 4th Cir. 1988).

Moreover, the petitioner has failed to show the existence of the necessary cause and prejudice to overcome the procedural bar. To establish "cause," the petitioner must show that some objective factor external to the defense prevented him from timely raising his claim in state court. *See Saahir v. Collins,* 956 F.2d 115, 118 (5th Cir.1992). To establish prejudice, the petitioner must show, "not merely that the [asserted] errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (Emphasis in original). Neither "cause" nor "prejudice" is present in the instant case that would support this Court's disregard of his procedural default. Further, to demonstrate that a failure to consider the claim will result in a "fundamental miscarriage of justice," a habeas petitioner must show, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 645 (5th Cir.1999). To establish such actual innocence, the petitioner

must "support his allegations with new, reliable evidence that was not presented at trial and must

show that it was 'more likely than not that no reasonable juror would have convicted him in the

light of the new evidence.'" *Id.*  The petitioner has failed to make this requisite showing,

therefore the Court is precluded from consideration of Claim 4.

### Claim (5): Prosecutorial Misconduct

In Claim 5, the petitioner asserts that his Fifth, Sixth, and Fourteenth Amendment rights

were violated due to prosecutorial misconduct.  The petitioner contends that the prosecution

allowed Detective Blake to perjure himself by testifying that he attempted to obtain surveillance

tape from a gas station, but the gas station did not have recording equipment.[19]  The petitioner

brought this claim in his application for post-conviction relief and attached an affidavit from the

gas station's owner, who swore that the store does have video surveillance footage, but no one

came to view it.[20]  The petitioner claims that the outcome of his trial would have been different

had the police viewed the tape because the tape would have shown that there were three males

that got into an altercation with the victim who should have been investigated.  He also claims

that the outcome would have been different had Detective Blake not lied under oath.  The

petitioner further alleges that the state coerced witness Larry Ledoux into testifying that he saw

the petitioner chase the victim with a knife.[21]  The petitioner points to inconsistencies between

Ledoux's original statement to police and his trial testimony as proof that Ledoux was coerced.[22]

In ruling on the petitioner's application for post-conviction relief, the state court dismissed

this claim as procedurally barred under Louisiana Code of Criminal Procedure Article 930.4 (B).

---

[19] R. Doc. 1-1, p. 199.
[20] R. Doc. 7-1. p. 31.
[21] R. Doc. 1-1. p. 201.
[22] R. Doc. 1-1, p. 201-203.

The state court found that the petitioner was aware of Detective Blake's testimony at the time he filed his appeal and inexcusably failed to raise the claim on appeal.[23]  The Louisiana Supreme Court affirmed the procedural bar in its *per curiam* opinion denying review, specifically citing Louisiana Code of Criminal Procedure Article 930.4.[24]

As discussed above in connection with Claim 4, Louisiana Code of Criminal Procedure Article 930.4 is an independent and adequate state ground for procedural default that prevents this Court from reviewing Claim 5.  Like Claim 4, the petitioner has made no attempt to show the existence of the necessary cause and prejudice to overcome the procedural bar.

### *Claim (6): Denied Right to Confront Witness Against Him*

In Claim 6, the petitioner asserts that he was denied his Sixth Amendment right to confront Dr. Corrigan, who conducted the autopsy of the victim.[25]  At trial, Dr. Corrigan's autopsy report was read and was interpreted by Dr. Cooper because Dr. Corrigan had retired and moved to St. Louis.  The petitioner raised this claim on direct appeal with the First Circuit, arguing that he had the right to confront the author of the report under the United States Supreme Court case of *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009).  The First Circuit acknowledged that courts are split on the question of whether an autopsy report is testimonial under *Melendez-Diaz*, holding:

> [W]e need not determine the legal issue of whether Dr. Cooper's testimony explaining the autopsy report violated the defendant's Sixth Amendment rights, because even assuming, without deciding, there was error, we conclude any error in admitting the evidence was harmless beyond a reasonable doubt…
>
> Dr. Cooper's conclusion that Milliken was stabbed to death did not prejudice the defendant, because it was supported by independent evidence. Ledoux was with the defendant and Milliken when he witnessed the defendant pull out a knife and chase after Milliken.  Kirk testified at trial that he found Milliken on the ground shortly thereafter dying of stab wounds. Kirk's 911 call was played for the

---

[23] R. Doc. 7-1, p. 33-34.
[24] R. Doc. 7-1, p. 35-36.
[25] R. Doc. 7-1, p. 203-206.

jury. The recording of the 911 call revealed that when Kirk asked Milliken who stabbed him, Milliken responded, "Dwain Williams." Moreover, the autopsy protocol was not submitted into evidence. Defense counsel had ample opportunity to, and, in fact, did cross-examine Dr. Cooper at trial. Defense counsel was afforded the opportunity to elicit from Dr. Cooper any information he thought might help his case.

       There was sufficient evidence in the form of eyewitness testimony and forensic evidence, and the record leaves no doubt the defendant stabbed Milliken to death. No harm was suffered by the defendant as a result of defense counsel's inability to cross-examine Dr. Corrigan rather than Dr. Cooper. Accordingly, we conclude that the admission of Dr. Cooper's testimony, if error, was harmless error beyond a reasonable doubt.[26]

Even assuming the autopsy report is deemed testimonial and a violation of the petitioner's constitutional rights, the effect of Dr. Cooper's testimony is harmless. It is well established that violations of the Confrontation Clause are subject to harmless error review. *See. e.g., Coy v. Iowa,* 487 U.S. 1012, 1021 (1988) (holding that the denial of face-to-face confrontation is subject to harmless error review). In order to be entitled to habeas relief, the petitioner must demonstrate that any constitutional error "had substantial and injurious effect or influence in determining the jury's verdict" and that the error resulted in "actual prejudice." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (internal citation and quotation marks omitted).

Given the substantial and independent evidence of guilt identified by the First Circuit, particularly the victim's identification of the petitioner as the person who stabbed him, the petitioner has failed to demonstrate that the alleged constitutional error "had substantial and injurious effect or influence in determining the jury's verdict" and that the error resulted in "actual prejudice." The petitioner has likewise failed to show that the First Circuit's harmless error decision was contrary to, or an unreasonable application of federal law. Accordingly, Claim 6 is without merit.

---

[26] *State v. Williams,* 2012-0147 (La. App. 1 Cir. 9/21/12), 2012 WL 4335435.

21

## Claim (7): Sufficiency of the Evidence

In Claim 7, the petitioner asserts that his conviction was based on insufficient evidence. In his argument on this claim, the petitioner points to the criminal history of two witnesses, Larry Ledoux and Anthony Kirk, along with the fact that both witnesses admitted to being intoxicated and the fact Ledoux was sent by the prosecution to a drug rehabilitation center to "clean him up for court."[27] The petitioner raised this claim on direct appeal. The First Circuit reviewed the standard for sufficiency of evidence set forth in *Jackson v. Virginia*, 433 U.S. 307 (1979) and found that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The First Circuit reviewed the petitioner's arguments in detail:

> While not explicitly stated, the thrust of the defendant's argument is that because of unreliable eyewitness testimony, the State did not prove his identity as the person who stabbed and killed Milliken. The defendant contends that Ledoux had pending criminal charges, and Kirk had prior convictions. The defendant also contends that Ledoux was intoxicated the night Milliken was killed and did not testify at trial about the same thing he had told the police. Thus, according to the defendant, it was obvious the prosecutor compelled Ledoux "to testify to things he actual[ly] did not see or remember because of his intoxication." The defendant contends that Kirk was also intoxicated when he found Milliken. According to the defendant, Kirk was "drinking on a quart of beer and a quart of bourbon" about 2:00 a.m. or 3:00 a.m. The defendant also suggests Kirk's statements to the 911 operator were inconsistent, because Kirk could not understand some of what Milliken was trying to say.
>
> Ledoux testified at trial that before he had gotten together with the defendant and Milliken, he had drunk a few beers and smoked marijuana. Ledoux stated, "I was tipsy before I even met them." Beyond this admission, there was no testimony developed on cross-examination that Ledoux was so intoxicated that he could not remember what he had witnessed or had remembered the incident incorrectly. To the contrary, Ledoux provided a very detailed accounting of what transpired the night Milliken was killed, including details of the hours prior to being picked up by the defendant, as to well past the time Milliken had been stabbed.
>
> Ledoux's inconsistent statement to the police, as suggested by the defendant, referred to what he told the police regarding the last time he saw the defendant. Ledoux testified at trial that he stayed in the car looking for the piece of crack cocaine Milliken had knocked away; then minutes later the defendant

---

[27] R. Doc. 1-1, p. 206-207.

returned to the car and took Ledoux home, Ledoux stated at trial that when he gave his statement to the police, he did not tell them that the defendant came back to the car and drove him home. Instead he told the police that he had gotten out of the car and walked home before the defendant returned to the car. Ledoux explained that he was ashamed to tell the police that he was looking for crack cocaine instead of going to see about his friend.

Despite the defendant's contention that Kirk was drinking a quart of bourbon, Kirk testified at trial that he drank a couple of beers earlier in the day and that, when he was in his truck between 2:00 a.m. and 3:00 a.m., he had a quart of beer with him. He stated that he had taken a couple of sips out of it.

Regarding the 911 call, we find no inconsistencies as suggested by the defendant. The defendant asserts in his brief that Kirk stated he heard Milliken say his name was "Joseph Johnson." The defendant further asserts that Kirk heard Milliken say "Johnson Johnson." The defendant notes that Kirk was asked on cross-examination, "When you asked him what his name was, what you heard and what you attempted to tell the operator was that you heard Joseph Johnson; is that correct?" Kirk responded, "Yeah. I really couldn't understand him though,"
Our review of the 911 recording reveals that Milliken was in a great deal of pain as he lay dying and had difficulty speaking. During the call, when Kirk asks Milliken what happened and if he had been shot, Milliken does not respond. Kirk tells the 911 operator, "He's not responding, ma'am." When Kirk asks Milliken his name, Milliken is heard mumbling incoherently. Kirk then asks Milliken several more times what his name is Milliken finally appears to say "Joseph," then moments later, "Jonathan." Kirk, unable to understand him, asks "Java? Java?" At this point, the 911 operator asks, "Joseph Johnson?" Kirk then asks Milliken, "Joseph Johnson? Is it Joseph Johnson?" Milliken does not respond, but continues to moan in pain. A little less than two minutes later, Kirk asks Milliken what happened. Barely audible, Milliken says he was stabbed. Kirk then asks Milliken several times who stabbed him, Milliken can be heard saying, "Dwain," then moments later, "Dwain Williams." Kirk repeats the name "Dwain Williams" to the 911 operator.

When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. The jury's verdict reflected the reasonable conclusion that based on the physical evidence and the testimony of Ledoux and Kirk, the defendant stabbed Milliken. In finding the defendant guilty, the jury clearly rejected the defense's theory of misidentification.

The jury heard testimony about Ledoux's intoxication and his convictions for felony theft, simple burglary, and possession of marijuana; it heard about Kirk's convictions for simple burglary, battery, and aggravated assault, and that he was drinking alcohol when the defendant and Milliken ran past him. The jury heard all of this testimony and viewed all of the evidence presented to it and found the defendant guilty of manslaughter. The defendant did not testify. Whether the jury believed some or all of the testimony of Ledoux and Kirk cannot be ascertained

from the verdict. Regardless, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. Moreover, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient.

After a thorough review of the record, we find that the evidence negates any reasonable probability of misidentification and supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of the hypothesis of innocence suggested by the defense at trial, that the defendant was guilty of manslaughter.[28]

The habeas court must resolve all conflicting inferences and credibility choices in favor of the verdict and may not substitute its judgment for that of the factfinder's. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Thus, under the standards of *Jackson* and § 2254, this court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Considering this standard, the Court finds that the First Circuit's decision on sufficiency of the evidence was neither contrary to, nor an unreasonably application of federal law. Accordingly, the petitioner is not entitled to habeas relief on Claim 7.

### Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. §

---

[28] *State v. Williams,* 2012-0147 (La. App. 1 Cir. 9/21/12), 2012 WL 4335435 (internal citations omitted).

2253(c)(1)(A).  Although the petitioner has not yet filed a Notice of Appeal herein, the Court

may address whether she would be entitled to a certificate of appealability.  *See Alexander v.*

*Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a

habeas petitioner has made a substantial showing of the denial of a constitutional right.  28

U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive

grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues presented

are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787

(5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In the instant case, the

Court finds that reasonable jurists would not debate the denial of petitioner's application or the

correctness of the substantive ruling.  Accordingly, it is appropriate that, in the event that the

petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied, and

that this proceeding be dismissed.  It is further recommended that in the event the petitioner

pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on May 18, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

25